UNITED STATES DISTRICT COURT FOR THE SEVENTH CIRCUIT
DISTRICT OF WISCONSIN

ARMIN WAND, III,

        Petitioner-Appellant,

Vs.                                       Case No.

GARY BOUGHTON, WARDEN,
WISCONSIN SECURE PROGRAM FACILITY,
        Defendant-Appellee,

## REQUEST TO ISSUE A CERTIFICATE OF APPEALIBILITY

Armin G. Wand, III, Pro Se, Moves this court for a REQUEST TO ISSUE A CERTIFICATE OF APPEALIBILITY, pursuant to Federal Rules of Appellate Procedure 22(2).

### STANDARD OF REVIEW

(A) petitioner seeking postconviction relief under 28 U.S.C. § 2254 has an automatic right to appeal to a district court denial or dismissal of the petition. Instead, (the) petitioner must first seek and obtain a certificate of appealibility. "MILLER-V. CROCKTRELL, 537 U.S. 322, 327, 123 S.Ct. 1029 L.Ed. 931 (2003). A certificate of appealibility may issue "only if the applicant has made a substantial showing of the denial of a constitutional

right". 28 U.S.C § 2253(c)(2). "It is consistent with § 2253 that a (Certificate of appealibility) will issue in some instances where there is no certainty of ulitmate relief. After all, when a (Certificate of appealibility is sought, the whole promise is that the prisoner has already failed in that endeavor". MILLER, 537 U.S. at 337 (quoting BAREFOOT V. ESTELLE, 463 U.S. 880, 893 n.4 103 S.Ct 3383, 77 L.Ed. 2d 1090 1983)).

"Where a district court has rejected the constitutional claims on the merits, the showing requires to satisfy § 2253(c) is straightforward: The petitioner Must demonstrate that reasonable jurist would find that the district court's assessment of the constitutional claims debatable or wrong". SLACK V. McDaniel, 529 U.S. 473, 484, 120 S.Ct. 1596, 146 L.Ed. 2d 542 (2000). "(A) claim can be debatable even through every jurist of reason might agree, after the (Certificate of appealibility) has been granted and the case has received full consideration, that (the) petitioner will not prevail". MILLER, 537 U.S. at 338.

## APPLICATION

The petitioner subsequently entered guilty pleas to three counts of first-degree intentional homicide, one count of attempted first-degree intentional homicide, one count of arson, and one count of felony Murder. He seeks a certificate of appealibility on his claims that his confession was

-2-

coerced and unreliable, and to expand the certificate of appealibility to include that the petitioner's arrest was unlawful and tainted his September 9 confession.

Petitioner is entitled to withdraw his guilty plea when the district court erred by dismissing petitioners writ of habeas corpus without holding an evidentiary hearing.

When a suspect makes ambiguous statement regarding his rights to silence, the police may ask no questions other than to clarify whether the suspect in fact wishes to invoke, or to waive, or to stay on the fence, <u>UNITED STATES V. RAMIREZ</u> 79 F.3d 298, 304 (2nd Cir. 1996). In such cases, statement such as these serves only to badger the suspect to change his mind.

In Miranda the Supreme court has condemned the pschological tactics and the techniques employed by the investigators in this instance there is ample evidence to support that Wands confession was the product of coercisive conduct by the government agents and not the result of a voluntary waive of his fifth Amendment rights. The Miranda safeguard comes in to play when ever a person in custody is subject to either express questioning or its functional equivalent. That is to say, the term "interrogation" under Miranda refers not only to express questioning, also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police

-3-

should know are reasonably to elicit an incriminating response from the suspect. After spending 3 and ½ hours with Wand on September 8, 2012, special agents Sielehr and Montgomery was aware of Wand's personal characterics and making two statements after Wand invoke his right to silence that Wand would want to continue to talk. pg. 89 Line 116

> Sielehr: So we're going to talk about that right now. So just go ahead and have a seat. Alright gonna be 1095, so let's talk about things here and we'll explain what's happening and answer questions you may have and then we can take care of things that we talked about. OK? I just got off the phone and the decision has been made that based upon all the information was the we will be taking you into custody tonight. OK! A Sheriff's Deputy from Lafayette County will be in route shortly. It's gonna take probably a good hour and a half or there abouts for ah that person to get here. In the Mean time we can talk about some of those things. Ah, there's some formalities we need to go through here first and then we can talk about some of those other things that we wanted to talk about and then ah at the end we can answer any questions you got. Um, give you any answers that we're able

-4-

to give, Um, Brad, I mean any-...
(1095 A suspect with a disability).

At that point Wand invoked his right to silence. A reasonable jurist would find that the district courts assessment that Wand's claim that the agents comments after Wand invoked his right to silence on September 8 debatable or wrong.

The district court denied Wand's claims that his arrest on September 8 was unlawful and tainted his confession on September 9 because he was not brought before a judicial officer within 48 hours. County of Riverside v. McLaughlin, 500 U.S. 44, 56 (1991); Gerstein v. Pugh, 420 U.S. 103 (1975). The district court erred when it stated that Wand's arrest was well within the 48 hours time period prescribed Pugh. The district court caculated the time of the arrest to his September 9 interrogation that assessment is wrong. The Supreme court held that delay is usually measured from the time of the suspects arrest and his initial appearance and not from the ending of one interrogation and the begininng of another.

An unneccessary delay between the arrest and initial appearance may violate due process. Wand was taken into custody after giving an involuntary statement on September 8, 2012 at 9:45 p.m. Wand did not have his initial appearance until September 12, 2012 at 1:00 p.m. which is approximately 87 hours and 15 minutes. The probable cause and judicial determination

-5-

was falsified by Chief Hayley Saalsaa. Chief Saalsaa documented that Wand was taken into custody without arrest warrant on September 4, 2012 at 9:45 p.m., but even falsifying the probable cause and judicial determination and when Wand had his initial appearance is still outside of the 48 hours.

    A probable cause and judicial determination issue and jurisdiction is never waived. First, Wand was required to have a Gerstein hearing to establish that extraodinary circumstances existed as to why he did not have an initial appearance within 48 hours. Secondly, Wand was also required to have a Franks hearing to show the defect in the probable cause and judicial determination. FRANKS V. DELAWARE, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed. 2d 667 (1978). The probable cause and judicial determination was falsified to look like that Wand was arrested and had his initial appearance with the 48 hour time period, however, the falsified date of Wands arrest is still outside of the 48 hours when Wand had his initial appearance. In Franks the court held that a defendant challenging validity of a search warrant is entitled to a hearing if he preliminary shows that: (1) the warrant affidavit contained a "deliberate falsehood," or statement made with "reckless disregard of the truth and 2) without the allegedly false statement the warrant affidavit is not sufficient to support a finding of probable cause. Id. at 155-56, 171, 98 S.Ct. 2674. And if at hearing, the defendant establishes these elements the search

Warrant must be voided and the fruits of the search excluded from evidence.

When Wand entered his guilty plea he was not aware of the defect in the probable cause and judicial determination. The petitioners misapprehension stem from an affirmative government misrepresentation that strikes at the integrity of the prosecution as a whole, it is only when a defendant misapprehension of the strength of the governments case" results from some particularly pernicious from impermissible conduct that due process concerns are implicated.

A guilty plea is not knowingly and voluntarily made when the defendant had been misinformed" as to a crucial aspect of his case". Given the totality of the circumstances of this case — a law enforcement official intentionally lying in a probable cause and judicial determination to make it appear that Wand was arrested and had his initial appearance within the 48 hours, even though by changing the date when Wand was taken into custody is still beyhond the 48 hours. Chief Hayley Saalsaa affirmative misrepresentation tinged the entire proceedings, rendering the petitioners plea involuntary and violated his due process right.

A guilty plea" not only must be voluntary but must be (a) knowing intelligent and done with sufficient awareness of the relevant circumstances and likely consequences".

-7-

BRADY V. UNITED STATES, 397 U.S. at 748, 90 S.Ct. 1463. To set aside a plea as involuntary, a defendant who was fully aware of the direct consequences of the plea must show that (1) "some egregiously impermissible conduct (say, threats blantant misrepresentation or untoward blandishment by government agents) antedated the entry of his plea" and (2) The misconduct influenced his decision to plead guilty, or put another way, it was material to that choice". FERRARA V. UNITED STATES, 456 F.3d 278, 290 (1st Cir. 2006) (emphasis added) (citations omitted). Also see BRADY V. UNITED STATES, 397 U.S. at 755 90 S.Ct. 1463.

   Citing Brady v. united states and Ferrara, defendant contends that the officers deliberate misrepresentation underpins the entire case against him, thereby rendering his plea involuntary. Here, petitioner argues that his entire approach to the case would have been different", had he know about the affirmative misrepresentation and felonies behavior. The petitioner should not be penalized because he did not discover the misconduct earlier. The petitioner did not learn about the misconduct until he received his casefile from his appellate attorney.

   Finally, allowing a defendants guilty plea to stand when a police officer intentionally lies in a probable cause and judicial determination to extend the 48 hour time to hold an initial appearance undermines police confindence in the

-8-

judicial system. "Whether to prosecute, issue a warrant, indict and convict are serious matters that are decided in large measure based on what a police officer relates. So when an officer does not tell the whole truth, public confindence in the fair administration of criminal justice inevitable is eroded". UNITED STATES V. GRIBBEN, 984 F. 2d 47, 48 (2nd Cir. 1993).

Wand was arrested after giving an involuntary confession on September 8, 2012 at 9:45 p.m and did not have his initial appearance until September 12, 2012 at 1:00 p.m., which is 87 hours and 15 minutes, during which agents Sielehr and Montgomery made two comments to Wand in hopes that he would initiat contact. So they can continue to interrogate him. If agents Sielehr and Montgomery did not make those comments after Wand invoked his right to silence he would not have initiated the contact on September 9, 2012. The involuntary confession on September 9, 2012 is the product of an unlawful arrest.

A confession obtained from defendants during periods of unneccessary delay prior to the initial appearance are generally inadmissible at trial. See CORLEY V. U.S., 303, 323 (2009), U.S. V. Thompson, 772 F.3d 752, 762-64 (3rd Cir. 2014) (confession inadmissible because obtained from defendant during unreasonable 48 hour delay before initial appearance), also see U.S. V. PIMENTAL, 755 F.3d 1095,

-9-

1101-04 (9th Cir. 2014) (confession inadmissible because obtained from defendant 4-day delay before initial appearance). A reasonable jurist would find that the district court's assessment that there was no residential taint from September 8 debatable or wrong.

In MO V. SIEBERT, 542 U.S. 600, 615 (2004). Most circuits have adopted Justice Kennedy's test in Siebert, which held that when police deliberately interrogate a suspect without Miranda warnings before a second properly warned interrogation so that the police can use the suspect earlier unwarned confession to elicit a warned confession, the statement also be excluded. See Id. at 622. Siebert is similar to the case at bar on September 8, 2012 the agents did not read Wand his Miranda warning until after he invoke his right to silence at which time agents Sielehr and Montgomery made two comments toward Wand in hopes that he would reinitiate contact so they can elicit a properly warned confession, If the agents would not of made those comments toward Wand then Wand would not have initiated the interrogation on September 9, 2012 and this case would be entirely different.

The district court found that Wand had forfeited his argument that his September 9, 2012 statement was coercive in light of his personal characteristics by failing at all times before the circuit court to identify

-10-

a single specific tactic, statement, or question of the agents and failed to develop his argument on appeal.

AEDPA governs the availability of evidentiary hearings on federal habeas review and generally bars them except in narrow exceptions ~~see the~~ see 28 U.S.C. § 2254(e)(2)(A),(B). But § 2254(e)(2)'s bar only applies when the failure to develop the factual basis for a claim is attributable to the petitioner. WILLIAMS V. TAYLOR, 529 U.S. 420, 435, 120 S. Ct. 1479, 146 L.Ed. 2d 435 (2000), DAVIS V. LAMBERT, 388 F. 3d 1052, 1059-60 (7th cir. 2004). Here it is no fault of Wand that the factual basis of his claims has not been developed. Wand diligently sought a Machner hearing at every step in his state court proceedings, but those request were denied. Section 2254(e)(2) thus does not bar an evidentiary hearing for Wand. ALLEN V. BUSS, 558 F. 657, 664-65 (7th cir. 2009) § 2254(e)(2) does not block evidentiary hearing when state court did not fully consider evidence petitioner had put forth, Davis, 38 F. 3d at 1060 § 2254(e)(2) does not bar where petitioner was "diligent in pursing his opportunities to develop the neccessary facts in state court".

With AEDPA posing no bar, Wand is entitled to an evidentiary hearing in federal court if (1) he has alleged facts which, if proved, would entitle him to habeas relief and (2) the state courts, for reasons beyhond his control, never considered his claim in a full and fair hearing. Davis, 388 F.3d at 1061, MATHENEY V. ANDERSON, 253 F.3d 1025, 1039 (7th cir 2001). For the reasons explained it is clear that the state court

-11-

did not consider Wand's claims in any full and fair hearing. Wand requested a Machner hearing at every step in his state proceedings in order to develop the factual basis for his claims, but those request were denied. See WARD V. JENKINS, 613 F.3d 692 2010) (Petitioner not at fault for failing to develop factual record when state courts refused his request for evidentiary hearing). Wand has satified this requirement.

The district court admitted the factors that support Wand's claim of coercion include his intellectual limitations, his compliant personality, and his claimed mental exhaustion while facing his third interview in three days after spending a restless night in jail.

The court found that Wand had not slept in his jail cell from September 8 into the 9 before his interrogation. Wand testified at the suppression hearing that he was disturbed by the guards checking on him and tapping the preventing him from falling asleep. (States repsonse brief 20-16 at 243). The jail care sheet reflects the guards checked on Wand thirty-five times from midnight until 7:00 a.m. The state argues that the jail care sheet noted that Wand appeared to be sleeping at various time throughout the night, but one wonders how could Wand have known that the guards were checking on him every few minutes if he had been, in fact, asleep. The district court stated that Wand had the opportunity to rest. Wand testified every time the guard checked on him the guard tapped the bars. The court did not consider that Wand had just lost most

-12-

of his family and his home in a fire and had been isolated and subject to many hours of coercive questioning just a few hours before.

Intellectually impaired individuals are more likely to give unreliable statement and false confessions. Drizin and Leo (2004) identified at least 20 intellectually impaired defendants in their sample of 125 false confessors— and this figure is probably an underestimate because intelligence test scores were not available in most cases. Intectually impaired persons are less likely to understand their Miranda rights (Fulero & Everington, 1995) and often exhibits a strong tendacy to say "yes" to even absurd questions (Finlay & Lyons, 2002). The agents on September 8 and 9th, 2012 realized that Wand suffered from mental disability, but ignored procedures for questioning suspect of low intelligence. September 8, 2012 interrogation (page 89 Line 117), and (September 9 interrogation pages 158-162). See BIES V. SHELDON, 775 F. 3d 386, 402, 404 (6th Cir. 2014), (Waiver invalid because defendant with IQ in th 0.4th percentile and communication skills of a 10-year old exhibit behavior that should have led detectives to question his capacity to knowingly and intelligently waive). Also see US V PRESTON, 751 F. 3d 1008, 1020-22 (9th Cir 2014), (Waiver of defendant with IQ of 65 and "very impaired" ability to understand everyday interpersonel exchanges" invalid because officers realized defendant suffered from mental disability but ignored procedures for questioning suspect of low intelligence).

The district court erred when it assessed

-13-

that Wand did not say that he was tired. During the end of the interrogation, Wand's account became almost incoherent. He seemed confused. He spoke slowly and quietly. Wand was extremly tired and confused, had been told different things by different investigators and is trying to placate his interrogators so as to bring an end lengthy, stressful questioning, infact, beginning on page 143, Wand appeared to give up. He sat nearly motionless, looking dazed and tired. He no longer resisted the implicit demands of his interrogators. At the end of the interrogation, Wand looked wobbly when he left the room and a jailor took Wands arm for support. The agents on September 4th realized that Wand was tired.

> Agent Reimer: Words the deal. You need to wake up because this is serious. Okay? We're being very decent here, but it's getting to be quarter to eight at night, and you're just kind of hanging here like this. You're hard to hear. Okay? We need to know what happened to these kids. (Page 135 line 6307).

At page 143 line 6608 agent Reimer says to Wand "I'm tired. You're tired". Wand's response at 6648 "Yes"

At Wand's post conviction hearing to determine if the court will grant or denied Wand and evidentiary hearing, Wand's appellate attorney put on record that Wand maintains his innocence. (State's br. 20-21 at 5). There is doubt that Wand is guilty of the charges to which he pled and "the ends of justice would better be served by submitting the case to a trial. A reasonable jurist would find that the district courts

-14-

assessment that Wand's characteristics and police tactics debatable or wrong.

The fourteenth Amendment forbids use of involuntary confessions but only because of probable unreliability but also because of attitude that important human values are sacrificed where agency of government, in course of securing conviction wrings confession out of accused against his will and because of deep rooted feelings that police must obey law while enforcing law, that, in the end, life and liberty can be as much exchange from illegal methods to used convict those thoughts to be criminals as criminals themselves.

Federal Habeas corpus Court in face of unreliable state court procedure with respect to determination of voluntariness of confession would not be justified in disposing of petition solely, on of basis of undisputed portions of full record, but at very least would require evidentiary hearing to determine factual context in which confession was given.

Interrogators typically use techniques designed to (1) create a psychologically stressful situation and (2) increase suggestibility and compliance to the demands of authority figures. These techniques — which include social isolation and lengthy, persistent questioning — are associated with high rates of confession and a heightened risk of false confession.

-15-

Wand is a highly compliant person. During each of his interrogation he was isolated. Wand had no contact with outside persons from about 6:30 p.m. the night of September 8 until the end of his interrogation after 9:00 p.m. on September 9. Wand is extremely compliant with intellectual impairment who had endured isolation, sleep deprivation, sensory deprivation and hours of interrogation.

In the course of six interviews over three days, Wand did not produce, on his own accord, a single piece of information that demonstrated his actual guilt. He never provided police with factual information about the fire that the police had not told him first. Thus, even where a confession is shown to be unreliable, when courts fail to dismiss the false confession cases at the pretrial stage, the overwhelming majority of defendants will be wrongfully convicted. Here, not only does Wand's confession does not meet reliability criteria, there's other reasons to doubt his guilt. It is questionable whether the fire was arson in the first instance. A reasonable jurist would find that the district court's assessment that Wand's claim that his confession was not "Reliable" debatable or wrong.

WHEREFORE, The petitioner-appellant respectfully prays that this court GRANT him a CERTIFICATE OF APPEALIBILITY and allow him to appeal the district court erroneous determination.

Dated this 7th day of September, 2020

-16-

Respectfully Submitted,

*Armin Wand III*
Armin Wand III #380173
Pro Se
W.S.P.F. - P.O. Box 1000
Boscobel, WI 53805

UNITED STATES DISTRICT COURT FOR THE SEVENTH CIRCUIT
DISTRICT OF WISCONSIN

Case NO.

ARMIN WAND, III,

   Petitioner-Appellant,

vs.

GARY BOUGHTON, WARDEN,
WISCONSIN SECURE PROGRAM FACILITY,

   Respondant-Appellee,

   I am an inmate confined in an institution. Today, September 7, 2020, I am depositing the Request to issue a Certificate of Appealibility in this case in the institution's internal Mail System.
   I declare under penalty of perjury that the foregoing is true and correct. See 28 U.S.C. § 1746

Dated this 7th day of September, 2020.

*Armin Wand III*
Armin Wand III #380173
Pro se
WSPF - P.O. Box 1000
Boscobel, WI 53805